Wheelbb, J.
The questions presented for our consideration which seem to require notice are—
1st. Is the contract disclosed by the record a mortgage? and if so,
2d. Can the plaintiff waive his remedy upon the mortgage, and recover in this action the money loaned?
1. The bill of sale and the defeasance were executed at the same time and in respect to the same subject-matter. They are constituent parts of the same agreement,’ and are to be considered as but one instrument. They are to receive the same interpretation and to have the same effect as if they had been embodied in the same writing and had formed but one deed. (3 Watts R., 196; 6 Id., 408.)
Had the defeasance been inserted in the same instrument with the bill of sale, it probably would not have occurred to any one to question that it was a mortgage, and could be nothing else. “All the cases show ” («aid the Supreme Court of Pennsylvania in a case cited at the bar) “that an absolute sale and de-feasance in the same instrument must be a mortgage and nothing but a mortgage.” (Kerr v. Gilmore, 6 Watts R., 408.) Yet the circumstance that the bill of sale and defeasance áre in separate instruments does not change the character of the contract. For, as was said by the same court. “It is well settled that the making of two instruments, a deed and defeasance, at. the, same time, of the same date, leaves it still a mortgage, precisely as if both were in the same instrument.” (Ib.)
Considering the two parts of the contract, then, as one instrument, it manifestly is a conveyance of property by way of pledge for the security of a debt, the conveyance to become inoperative and ineffectual on payment of the money at the time specified; and this is the substantive definition of a mortgage. (4 Kent’s Comm., 133.) “The essence of the defeasance is that it defeats the principal deed and makes it void if the condition be performed.” (Id., 141.) The, instrument here shows that money was advanced by the, plaintiff for the defendant, to be repaid at a time, specified ; in other words, it was loaned by the former to tiie hitter; the bill of sale and possession of the negro were delivered to secure the payment of the money, and it was stipulated that the negro and bill of sale were to be restored to the mortgagor; that is, the de-feasance was to defeat the bill of sale and operate its revocation upon the payment of the money at the time specified, and this is the essence of the defeasance by which the instrument is constituted a mortgage. •
“An absolute deed with a defeasance is a mortgage.” (2 Johns. Ch. R., 189; 15 Johns. R., 555; 2 Cow. R., 324.) “Equity looks to the substantial object of the conveyance, and will consider an absolute deed as a mortgage wherever it is shown to have been intended as a security.” (Fonbl. Eq., 4th Am. edit., 494. n.; 9 Wheat. R., 489; 4 Mass. R., 443; 6 Johns. Ch. R., 417; 7 Id., 40; 9 Serg. & R., 434.)
“As to what constitutes a mortgage,” says Story, (2 Story’s Eq., sec. 1018,) “there is ño difficulty whatever in courts of equity, although .there maybe technical embarrassment in courts of law. The particular form or words of *150 the conveyance are unimportant; and it may be laid down as a general role, subject to few exceptions, that wherever a conveyance, assignment, or other instrument, transferring an estate, is originally intended between tiie parties as a security for money or for any other incumbrance, whether this intention appear from the samo instrument or from any other, it is always considered in equity as a mortgage, and consequently is redeemable upon the performance of the conditions or stipulations thereof.”
‘■Originally it would seem,” said tiie learned judge who delivered tiie opinion of the court in- the case, before cited of Kerr v. Gilmore, “that what are now called mortgages, whether contained in one instrument or divided into an absolute deed and a defeasance on a separate paper, were considered at common law as sales on condition ; and if the condition was not performed at the day the estate became absolute and could never be recovered, payment or tender afterwards were equally unavailing; and perhaps we may suppose this was the intention,of one party, and the terms submitted to by the other, under tiie infatuation which seems at all times to have cheered the heart of the debtor with the hope that lie would soon be able to pay. It is unnecessary to inquire at what time and by what gradations courts of chancery took cognizance of and relieved tiie creditor from contracts which were often ruinously'hard. The courts of law at length took notice that mortgages were only securities for money. ‘The case of mortgages,’ says Chancellor Kent-, ‘is one of the most splendid instances in tiie history of our jurisprudence of the triumph of equitable principles over technical rules and tiie homage which those principles have received by their adoption in courts of law.’ ” (4 Kent’s Comm., 158.) After citing the treatises of Kent and Story, and referring to the cases by them eited. tiie court proceeds to say: “The result seems to be, in the opinion of those distinguished writers, the same which this co-urt liad early arrived at and uniformly adhered to as tiie true criterion of whether a paper or two or more papers amounted to an absolute sale or to a loan of money, and a pledge of land to secure tiie payment.” And after citing the cases decided in that court they say : “The result of these eases seems to be that if the agreement is in substancti a loan of money, no management or contrivance of tiie lender; no form of expression in the instrument, liot even dating the defeasance several days after the deed; not even tiie lender uniformly stating that he will not llave a mortgage, will avail. A sale in form, but which in fact and substance may be avoided by the payment of money within a given time, is and will be bekl to be a mortgage until lapse of time or some other matter changes it.”
Tiie learned judge who pronounced tiie opinion adds: “I repeat that almost every person who borrows feels a hope, however unfounded, that lie will, with the aid of a little money, be able to retrieve his affairs and repay at a precise time. Tiie advantage taken of those in distress and who are nndur this infatuation induces courts and Legislatures to interfere, and long and uniform experience has sanctioned the interference and established the law as above stated.” (-)
I regard the law upon this subject as too well settled upon uniform and enlightened adjudications to be now questioned, and tiie. policy in which it is founded as too deeply seated in tiie sense of justice and humanity of mankind ever to be overturned. It is the doctrine alike of tiie civil and the common law; was probably derived to the latter from tiie former, and is believed to be sanctioned by the enlightened jurisprudence of the civilized world. (2 Story’s Eq., sees. 1004 to 1020, and notes.)
In the ease before us it is manifest that a sale of the negro was not intended. The defendant owed the money to the witness Scott, who had liad the negro pledged for its payment. Scott proposed to purchase, but the defendant re-fnsecl to sell the negro. He tlnpi borrowed the money from tiie plaintiff, who was willing to give the further indulgence contracted for for the services of the negro, to pay Scott, who probably was not willing to give such further indulgence. Tbat’a sale was not intended is‘evident from the defendant’s *151 refusal to sell the negro to Scott, who says he was worth seven hundred dollars, and his receiving for-him from the plaintiff a much less sum, and inde.ed from all the circumstances attending the transaction.
By the terms of the contract the money was due on the 1st day of December, 1847, and the privilege of payment was to continue until the 1st day of March, 1848; hut if payment was not then made, it is stipulated that “ the privilege of redeeming said negro shall be forever barred.” That, however, was a coil-sequence, as we have seen from the authorities cited, which it was not competent for the parties to attach to the mortgage. This point was decided in the case of Duckett v. Townsend, (Dec. Term, 1848;) and it is the settled doctrine of both the civil and common law. “ So inseparable indeed is the equity of redemption from a mortgage,” says Story, “that it cannot he dis-annexed even by an express agreement of the parties. If, therefore, it should be expressly stipulated that unless the money should be paid at a particular day or by or to a particular person the estate should be irredeemable, the stipulation would he utterly void. , In tins respect courts of equity act upon the same principle which (we have seen) is avowed in the civil law, and most probably it has been borrowed from that source.” (2 Story’s Eq., sec. 1019.)
Iu the case of Stamper •«. Johnson (at December Term, 1S48) we said, upon the authority of numerous cases there cited : “A stipulation in the deed itself or in any separate deed executed at the same time and constituting with it one transaction, that the property shall bereconveyed upon the payment of money or the performance of the other conditions, constitutes a defeasance, and such conveyance will be considered and treated iu all respects as .a mortgage, and this though unaccompanied by any personal security for the payment of the money or the performance of the other conditions.”
Such is the precise description of the instrument in the case before us. Its stipulations and clear import characterize it as a security for. the payment of money at a future clay, and consequently a'mortgage.
2. The remaining question is equally free from difficulty.
When the debt became duo on the 1st day of December, 1847, the plaintiff liad his election either to proceed on the mortgage, had the subject of it survived, or to waive his remedy on tiio mortgage and bring his action on the personal liability of the defendant for the mou’ey loaned. This point was also decided in the case of Stamper v. Johnson.
The questions we have been considering have indeed been so fully considered by us iu former decisions that a further discussion of them or reference to authorities is unnecessary. I should have thought it sufficient to refer the decision of this case to our own previous decisions, had not counsel thought proper to reargue and the court to entertain in this case the questions adjudicated by those decisions, and had not doubts been expressed as to the law of the case. I need, however, but refer to these decisions, which will be found in point and fully to embrace tile ease under consideration. (Stamper v. Johnson, 3 Tex. R., 1; Lackett v. Townsend, Id., 119; Carter v. Carter, Dec. Term, 1849.)
The action was well brought to recover the money loaned, waiving the mortgage. Iu equity the debt is the principal, the mortgage but the incident. The loss of the security did not affect the right of the plaintiff to recover back the. money loaned. In equity the title to tho negro remained iu the mortgagor,' notwithstanding the mortgage, and the. death of the negro was his loss. This consequence necessarily results from the nature of the conveyance, it being but a security for and incident to the debt — the ultimate property remaining iu the mortgagor.
The action having been brought on the 12th day of September, 1S49, within less than two years from the time when the cause of action accrued, the statute of limitations interposed no bar to a recovery.
Note 54.—Horne v. Puckett;, 22 T., 201; Ruffier v. Womack, 30 T., 332; Boatright v. Peck, 33 T., 68; Beale v. Ryan, 40 T., 399; Gibbs v. Penny, 43 T., 560.
We are of opinion that there is no error in the judgment, and that it be. affirmed.
Judgment affirmed.