**FITHEL et al. v. SALTES.   (No. 9184.)**

Court of Civil Appeals of Texas.   Galveston.
Oct. 5, 1928.

On Motion for Rehearing Nov. 28, 1928.

H. E. Kleinecke, Jr., and McDonald & Wayman, all of Galveston, for appellants.

Levy, Levy, Barker & Kahn, of Galveston, for appellee.

GRAVES, J. Appellants make this substantially correct statement:

"Steve Saltes, appellee, recovered a judgment on November 2, 1927, against George Fithel, Stefeanos Makres and Pete Debaules, appellants, jointly and severally, for $3,655.17 in a trial to a jury. Motion for new trial was overruled, necessary formalities for appeal complied with, and the case is here for review.

"As the case arises out of three written contracts repeatedly referred to in the pleadings of the parties and in the evidence, we will set them forth in the beginning.

"On September 16, 1922, appellee and appellants entered into articles of partnership as follows:

" 'This partnership agreement, made and entered into this 16th day of September, A. D. 1922, by and between Steve Saltis, Pete Debalis, Stefanos Makris and George Fithel, all of the city and county of Galveston, State of Texas, witnesseth:

" 'That the aforesaid parties are to launch themselves into the Restaurant business at No. 2104 Market St., Galveston, Texas, and shall be known as the Combination Sandwich Shop, consisting of Tables, Chairs, Counters, Stools, Counter, Stoves, Ice Boxes, Silverware, Kitchen Utensils, and etc., pertaining to the restaurant business, now in said premises and under lease from Austin and Co., Agents, and W. D. Haden, owner of building, which lease forms a part of said business.

" 'It is also agreed that said partners are equal owners in said business, and shall give their entire time to said business, and in the event if one or more of said partners shall become sick, disabled, or permanently injured so as not to fulfill his active part, then he shall employ some one to fulfill his active part.

" 'After any and all bills and expenses are paid pertaining and incurred by said restaurant, any and all profits, if there be any, shall be equally divided alike on the 1st of each month.

" 'Now, in the the event if one or more partner becomes dissatisfied in any manner and wishes to dispose of his interest, the remaining partner or partners shall have the option to purchase his interest, at a price agreed upon by all interested, then, if neither partner or partners care to purchase same, then said partner has the privileges to dispose of same to some outsider agreeable to said remaining partners.

" 'Witness our hand this 16th day of September, A. D. 1922.

" '[Signed]          Steve Saltes.
                     " 'Pete Debaules.
                     " 'Stefanos Makres.
                     " 'George Fithel.'

"(Acknowledgment omitted.)

"On October 22, 1925, appellee Saltes gave the following bill of sale to appellant George Fithel with the agreement at the end signed by Makres and Debaules. This is referred to in the pleadings and in the evidence as 'Exhibit A':

" 'Know all men by these presents:

" 'That I, Steve Saltes of the city and county of Galveston, Texas, for and in consideration of the sum of $1300.00, to me cash in hand paid by George Fithel, the receipt of which is hereby acknowledged and confessed,

have bargained, sold and delivered and do by these presents bargain, sell and deliver unto the said Geo. Fithel of the city and county of Galveston, Texas, the following described property and interests:

"'All interest, share and claim, and property rights, which I now have in the restaurant situated at No. 2104 Market Street, and occupying part of the ground floor of the three story brick building situated on Lot No. 8 in Block No. 561, in which there is now conducted a restaurant, known as the Combination Sandwich Shop in the City of Galveston, Texas.

"'And I do for myself, my heirs, executors, administrators and assignes covenant to and with the said Geo. Fithel, his heirs, executors, administrators and assigns to warrant and defend the title to said property before mentioned, against the lawful claim or claims of any and all persons whomsoever.

"'Executed in triplicate at Galveston, Texas, this the 22nd day of October, A. D. 1925.

"'[Signed]          Steve Saltes.

"'We, the undersigned, the remaining partners in the partnership conducting the restuarant above described do hereby agree to the above sale by Steve Saltes and do further agree that it shall in no wise affect the method of conducting the said restaurant on this date now for the life of the partnership agreement entered into between ourselves and the said George Fithel on or about Sept. 16th, 1922.

"'[Signed]          Peter Debaules.

"'Stefeanos Makres.'

"[Acknowledgment of Steve Saltes omitted.)

"On the same day, and as a part of the same transaction, the following, referred to in the pleadings, the evidence, and the court's charge as 'Exhibit B,' was executed:

"'Whereas there has this day been executed a bill of sale by Steve Saltes to all of his interest in the Restaurant known as the Combination Sandwich Shop at No. 2104 Market Street, in Galveston, Texas, to Geo. Fithel,

"'Now therefore that the relation of the parties to the said bill of sale be more clearly stated enter into the following agreement, the promise of one being the consideration for the promise of the other:

"'1. Owing to ill health it is necessary for the said Steve Saltes to leave Galveston, Texas, for medical treatment.

"'2. It is understood and agreed that the said Steve Saltes is indebted to certain persons and institutions in Galveston, Texas, in the sum of about $1300.00 which amount the said Geo. Fithel is to pay and receive credit on the amount of consideration set up in the bill of sale.

"'3. This agreement is to remain in force during the life of the term of the partnership agreement heretofore existing between the Steve Saltes, Pete Debaules, Stefeanos Makres and Geo. Fithel.

"'4. The said Steve Saltes is to have the right to pay back the money named in the bill of sale, at such times and in such amounts as he sees fit, or and if the profits on his share amount to the indebitedness is to receive and have credit for that against the said consideration, and at any time during the period mentioned he is to have the right to pay the said amount, and receive his share and be received again in the partnership, at which time the said Geo. Fithel agrees to execute a bill of sale back to him, and in the event the restaurant should be sold it is agreed that the said Steve Saltes is to receive the full amount of the sum of over and above his debt to Geo. Fithel, after payment of all debts.

"'Nonassignable. Books of concern to be the basis of all settlements. Executed in triplicate at Galveston, Texas, this the 22nd day of October, A. D. 1925.

"'[Signed]          Steve Saltes.

"'George Fithel.'

"(Joint acknowledgment omitted.)

"We will refer to this last instrument as either 'Exhibit B,' or as the 'repurchase agreement.'

"Appellee Saltes alleged, in substance, that the latter two instruments were executed on account of the fact that shortly prior to October 22, 1925, he contracted an illness which necessitated his leaving Galveston. He alleged that Debaules and Makres, although not parties to Exhibit B (the agreement between Saltes and Fithel), knew its contents and orally agreed with Saltes to be bound thereby and ratified and approved the same; that Fithel acted as their agent in making this instrument; and that they ratified it and were estopped to deny their ratification.

"Saltes alleged that he left Galveston in October, 1925, returned about April 6, 1927, and requested defendants on or about April 10th to permit him to examine the books, asked for an accounting and statement of the amount that had been paid to his creditors, and sought to go back into the partnership, but that defendants refused to comply with these requests, with the result that he brought this suit on May 26, 1927; that one F. M. Mabry was appointed auditor on June 10, 1927, and that his original and supplemental reports showed the net earnings of the partnership from October 15, 1925, to October 15, 1927, to have been $10,290.69; that in September, 1926, and prior thereto defendants entered into a conspiracy and adopted and put into practice a plan whereby the sales and receipts of the restaurant were reported in a sum of $10 or more per day less than the sales and receipts actually amounted to, and that thereby defendants reduced the true amount of the sales by the sum of $10 or more per day; that this practice continued up until the time of trial, as a result of which $4,800.00 more should be added to the

net earnings in addition to the amount shown in the auditor's report. It was admitted that defendants paid debts for plaintiff amounting of $1,322.50, and that this was a just and proper offset against the sum owing plaintiff. He averred repeated demands on defendants that they turn over to him $2,450.17, the amount due him, and that they recognize and return to him his share in the partnership valued at $2,000.

"He pleaded, in the alternative, that, if Debaules and Makres were not jointly and severally liable to him for the whole amount, they nevertheless damaged him in the sum of $2,000 by converting his one-fourth interest in the partnership.

"Defendants filed a joint answer and averred, in substance, that the contract of October 22, 1925, between Saltes and Fithel was void for want of consideration; that by the bill of sale to Fithel, Saltes sold all of his interest and has no claim against any of the defendants; that the contract between Fithel and Saltes was unenforceable as to Debaules and Makres because prohibited by the Statute of Frauds; that, while Debaules and Makres did agree that Saltes might sell his interest to Fithel, they did not agree, and never agreed, that Fithel could sell the interest back to Saltes, and denied that Fithel was their agent in the execution of the agreement with Saltes, and, in the alternative, that if the contract was binding on them, it was not enforceable because Saltes stayed away an unreasonable length of time.

"It was alleged that Fithel paid out more than $1,500 to plaintiff's creditors, which Saltes did not offer to repay and was not in a financial position to do so; that during plaintiff's absence defendants devoted their time and attention to the business and that plaintiff is not entitled in law or in equity to receive the benefits of their work and labor, and, further, that there were no net earnings from the business since plaintiff sold his interest; that such earnings as accrued were applied by defendants to the payment of salaries to them, which were reasonable and proper charges for the services performed; and that the additional work done by defendants and the additional expenses incurred in the operation of the restaurant amounted to more than one-fourth of the net profits from the date of the bill of sale to the date of the last audit of the books, and because thereof plaintiff is not entitled to any credit for the sums paid out by Fithel.

"There were other allegations in the petition charging that Saltes was an unfit and vicious person, but these allegations were stricken out on exceptions.

"By a supplemental petition plaintiffs, after referring to the provision of the original partnership having to do with sickness of a member of the firm, alleged that during his absence no one was employed by defendants to take his place or to do his active work.

"An auditor was appointed, and his report showed earnings for two years, beginning from the time Saltes left in October, 1925, to be $10,290.69.

"In answer to special issues, the jury found, in substance, that defendants Debaules and Makres did orally agree to 'Exhibit B,' the contract between Saltes and Fithel; that defendants did fail to enter in the books of the partnership the true amount of the sales and receipts to the amount of $3,600.00; that the reasonable value of the restaurant at the time of the trial was $6,000.00; that the amount of net earnings from October 16, 1927, (the date up to which the auditor's report came), to the time of verdict (November 2) amounted to $100.00, and that the amount of Saltes' debts which defendants paid, together with cash advanced to plaintiff, amounted to $1,342.50.

"The trial court construed the bill of sale and contract executed on October 22, 1925, to be a mortgage of plaintiff Steve Saltes' one-fourth interest in the partnership to the defendant George Fithel. Based on these findings, the auditor's report and the jury's verdict, the court gave judgment for Saltes against all defendants jointly and severally for $3,655.17, with interest from November 2, 1927."

The appeal challenges the correctness of what was thus done below on four grounds:

(1) It was a question of fact in the circumstances as to whether the contract of October 22, 1925, was a mortgage or a conditional sale, wherefore the trial court erred in so holding otherwise and in refusing appellants' request for the submission of that inquiry to the jury as an issue.

(2) There was also error in the court's refusal to allow the jury to pass upon the value, if any, of appellants' alleged extra services to the business during appellee's 20 months' absence, as well as in its exclusion of George Fithel's testimony that he paid out of his own pocket $25 per week for an extra man's services in the restaurant after appellee had left.

(3) The evidence was insufficient to sustain either the finding of $3,600 as having been withheld from the true total of the daily receipts, or the awards to appellee of $3,497.-67 in profits from and $1,500 as the value of his interest in the business.

(4) The other two appellants were not liable to appellee either for any alleged misappropriated gross receipts of the firm, or for profits inuring to his share during his absence, or for the value as under conversion of his one-fourth interest, even though they may have orally consented to the repurchase contract, because: (1) The misappropriation of the gross receipts, if any, was undisputedly shown to be that of Fithel alone, and noth-

ing either in the evidence or the contract showed any participation in or responsibility of the other two for it; (2) the undisputed evidence, including the appellee's own testimony, showed that he, contemporaneously with the execution of the contract of October 22, 1925, and the repurchase contract (Exhibit B), not only delivered possession of his one-fourth interest to Fithel and authorized him to receive the profits accruing thereon in the meantime, but further authorized him to sell it outright and account to the appellee for the value thereof.

None of these contentions, we conclude, should be sustained.

■ 1. The contemporaneous contracts in writing of October 22, 1925, designated as Exhibits A and B, being under the jury's unchallenged answer to special issue No. 1 between the same parties, relating to the same subject-matter, and being, as we think, plain and unambiguous in meaning, no reason appears for not applying the accepted rule in such circumstances that it was for the court to take and construe the instruments together, declaring their legal effect; that when so considered they clearly import the mutual intent to make the bill of sale a security for what Saltes then did and might thereafter come to owe Fithel seems likewise free from doubt. It was therefore properly interpreted as constituting a mortgage. 11 Corpus Juris, 409, 410; 6 R. C. L. p. 862; Elliott on Contracts, vol. 2, p. 855, § 1564; Stephens v. Sherrod, 6 Tex. 294, 55 Am. Dec. 776; Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087; Walker v. Wilmore (Tex. Com. App.) 212 S. W. 655.

■ If it could be properly said, however, that the ruling here challenged was error, it became harmless, we think, because the evidence conclusively showed a breach by appellants of the terms set out in the instrument claimed by them to evidence a conditional sale of the Saltes interest, as well as an attendant conversion of it by them; hence the same judgment against them would have followed anyway.

2. For several reasons the exclusion of the testimony complained of under these propositions constituted no prejudicial error.

■■ As concerns that reflecting the claim of appellants for the value of alleged extra services performed by them to the business during appellee's absence, the original contract itself not only negatived the right of any partner to other compensation than his proportionate share of the profits of the business, but further required him to give his entire time to it; furthermore, such claim was at most only a set-off to that sued upon by the appellee, and was neither pleaded herein by appellants as required by R. S. arts. 2014 and 2015, nor presented to or reflected by the auditor in his report, to which appellants failed to except in any respect; the auditor's report was in evidence, and,

since the proffered proof would have constituted a plain contradiction, in the absence of an exception thereto filed before the trial, it was not receivable. R. S. art. 2292.

These two last-mentioned considerations likewise apply to Fithel's testimony concerning his alleged $25 weekly payments; in this connection the auditor specifically certified to there being no record of any person's employment to take the place of any partner, and that no one was named or identified to him in that capacity; these findings were permitted to stand before the court without the challenge required by the cited statute.

■ 3. The sufficiency of the evidence to sustain the awards to appellee of $3,497.67 as his share of the profits earned by the business from the time he left up to the trial, and of $1,500 as the value of his interest therein, has not seemed to this court a matter of substantial doubt after a careful review of the statement of facts. The jury's finding that $3,600 was abstracted from the cash receipts, however, has presented some difficulty; but upon considering all the facts and circumstances bearing upon it, we conclude that it was at least one of those legitimate inferences the triers of fact might draw from all that was before them relating to the matter; it is true there was direct evidence to the actual withdrawal of $10 per day for only 15 days, which the appellee swore he personally saw done, but a network of circumstances woven around that furnished the jury a not unreasonable basis, we think, for the conclusion that the same thing continued for a year or more; for instance, the striking shrinkage in the net profits of the business, as comparable with the immediately preceding three years, for the one year between the 16th days of October 1926, and 1927, shown by the undisputed evidence, closely corresponding in amount to what a continuation of the $10 per day withdrawal would have totaled for that time, and wholly unaccounted for upon any other theory; especially, no doubt, did this dénouement seem suggestive to the jury, when it likewise undisputedly appeared that appellants had by contract between themselves, effective as of January 1, 1926, divided and appropriated between themselves in equal thirds each the entire Saltes one-fourth interest, and had then further failed to provide the auditor with copies of either their partnership or individual income tax returns for approximately that same period—that is, the year 1926. It is not deemed essential that there be here catalogued any others of the many circumstantial details the evidence reflects upon these issues.

■ Appellants ably argue upon this general phase of the cause that it was inequitable and unjust for the appellee to have been given, for the 20 months' period of his absence, his full share of the profits the busi-

ness yielded, without at the same time having either contributed to it his own services or employed at his own expense "some one to fulfill his active part," as the original contract of partnership expressly bound him to do. Were that result shown to be the state of the record, this court would readily agree, but it is not so found; on the contrary, the report of the auditor—an officer of the court under oath—rendered in two separate sections, showed that the only increase in wages for help to take the place of Saltes for the 20 months' period of his absence amounted, as best he could estimate it from all the data before and furnished to him by all the parties, to $17 per month, or a total for the 24 months up to the date of the trial of $408, which sum he charged up against and took from the aggregate balances he found in favor of Saltes; so that the appellee did in fact pay the only extra expense his absence was shown to have entailed upon the business. This is not substantially inconsistent in final effect with his own testimony, in purport that he put a man in his place when he left, and, while he did not individually pay him, "the house paid him"; as long as there were net profits accruing along in his favor, there seems no departure in that from his contractual obligation.

If these were not the facts, it was clearly incumbent on appellants to file exceptions to the auditor's report upon them as such in advance of the trial, and then develop the contrary before the court and jury.

■ 4. The liability with and under him of Fithel's coappellants seems to us to plainly flow from the facts; in the conduct of the business he was not only their copartner, but acted within the scope of his undisputedly shown plenary authority for them in generally managing the joint business, including keeping the firm's books, and handling its bank account and daily receipts; in such capacity he received and kept for the partnership all that was misappropriated, whatever the sum; moreover, in the language of the 11th and 12th counter propositions in appellee's brief, which we adopt as correctly reflecting the facts shown and the law applicable thereto:

"(11) It having been found by the jury in answer to Special Issue No. 1 that the appellants, Debaules and Makres, agreed and consented to the transaction entered into between appellee and appellant, George Fithel, as evidenced by the two instruments in writing, to-wit, Exhibits 'A' and 'B'; and it further appearing from the undisputed evidence that with knowledge of such arrangement said appellants, Debaules and Makres, though being bound by the terms and effect of same, nevertheless purchased from George Fithel proportionate parts of the Saltes interest in September 1926, effective as of January 1, 1926, dividing the net profits of the entire business into three parts in which the appellants shared equally, such conduct on the part of the appellants, Debaules and Makres, constituted a breach of their agreement with appellee and a conversion of the profits accruing to his share in the business, for which breach and conversion they became liable.

"(12) The jury having found in answer to Special Issue No. 1 that the appellants, Debaules and Makres, agreed and consented to the arrangement entered into between appellee and appellant, George Fithel, and the court thereunder having held them bound thereby; and it further appearing under the plain language and terms of Exhibit 'B' that at best the appellee only agreed that his interest might be disposed of by George Fithel if the *entire restaurant business* was sold, the breach by the appellants, Makres and Debaules, of their agreement with appellee, and their conversion of his interest and profits in the business, make them liable." 20 Ruling Case Law, pp. 915, 931; 30 Cyc. 468, and 38 Cyc. 2024.

Further discussion is deemed unnecessary, since these conclusions determine the merits of the appeal; the judgment has accordingly been affirmed.

Affirmed.

### On Motion for Rehearing.

■ Appellants' motion has convinced us that our original statement that the auditor took the sum of $408 from the aggregate balance he found in favor of Saltes was error; re-examination of the record shows that neither this nor any other amount on account of extra help to take Saltes' place was in fact charged up to him, whereas the whole of that so found by the auditor should have been; to that extent, therefore, the motion for rehearing will be granted, and our former judgment of affirmance will now be so reformed as to deduct from Saltes' recovery this sum of $408, together with 6 per cent. interest per annum thereon from October 15, 1927, to November 2, 1927, or an aggregate amount of $409.20, but otherwise will be left undisturbed. Except as indicated, the motion is overruled.

Granted in part, and former judgment reformed.