SANDERFUR et ux. v. BEARD et ux.
(No. 6882.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 14, 1923. Rehearing Denied March 14, 1923.)

1. Good will ⇐⇒7—Evidence held insufficient to show any good will existed or passed to purchaser of business.

Evidence *held* insufficient to show any good will existed or passed to purchaser of business.

2. Good will ⇐⇒1—"Good will" is intangible asset taxable and salable.

"Good will" is an intangible asset, salable and taxable when its value can be ascertained.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Good Will.]

3. Good will ⇐⇒7—Price of realty on which business is conducted immaterial in determining value of good will.

Where those claiming as partners a right to share in the proceeds of the sale of the good will of a business have no interest in the real property upon which the business is conducted, the price for which such property was sold can cut no figure in measuring the good will of the business, and, if the value of the land is material at all, it would be the reasonable market value at the time of sale.

4. Good will ⇐⇒7—Evidence of cost of realty inadmissible as affecting value of good will.

In an action involving the value of the good will of a business, the price paid for the realty on which the business was conducted was immaterial, and a deed reciting part of the consideration paid for such realty some time previous to the commencement of the business was clearly inadmissible, nor could its admission be justified as being for the purpose of testing the credibility and memory of the witness, since the deed did not purport to state all the considerations.

5. Good will ⇐⇒7—Whether good will existed and passed by sale held for jury.

Question whether there existed any good will that passed by the sale of a small business *held* for the jury, since the law does not assume that in the sale of any stock of goods, wares, or merchandise good will always passes.

6. Trial ⇐⇒191(2)—Charge assuming there was no obligation to pay money for interest in partnership except from particular source held error; issue was sharply disputed.

Where those claiming an interest as partners in the proceeds of the sale of a business were shown never to have invested anything therein, though they had agreed to do so, after the sale of certain property belonging to them, and where the issue whether they were to secure the money to be invested only from that source was sharply disputed, *held*, that a charge which assumed that there was no obligation to pay from any other source was error.

7. Trial ⇐⇒350(3)—In suit to recover interest in proceeds of sale of partnership business held issues as to plaintiffs' compliance with agreement and waiver thereof should have been submitted.

In suit to recover an interest in proceeds of the sale of an alleged partnership business, issues as to whether plaintiffs failed to comply with their obligations in their original agreement in forming the partnership and what, if any, obligation they failed to comply with, and whether defendants had ever waived such failure, should have been submitted.

8. Good will ⇐⇒7—Contract of sale admissible to show whether good will was involved in sale of business.

In an action to recover as a partner a share in the proceeds of a sale of a business, the contract of sale is admissible on the issue whether the sale involved the good will of the business and its value.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Action by Sam Beard and wife against George W. Sanderfur and wife. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Guinn & McNeill and Graham Dowdell, all of San Antonio, for appellants.

J. H. Bickett, Jr., L. M. Bickett, and E. D. Henry, all of San Antonio, for appellees.

COBBS, J. This suit was brought by appellees against appellants to recover their interest in the proceeds arising from the sale of a partnership business.

Appellants, being the owners of the store where the business was carried on, invited the appellees, who then lived at Leaky, to put money in the business to be carried on as a partnership business between appellants, contending the interest of appellee would be one-third of the profits, and the appellees contending it would be a half interest in the business. The business was to be conducted by appellees.

Appellants improved the building at their sole expense so that they and appellees would have a house to live in, and did so live in and enjoy until sold, free of rent or other charges.

There is no dispute as to the amount of the original investment in the business, expended for supplies, etc., paid for out of the private means of appellant, amounting to the aggregate sum of $2,006.15; not one cent thereof was ever paid therein to appellants for the interest of appellees.

The partnership business began October 1, 1920, and continued to about April, 1921, when the real estate, the store in which the business was carried on, and the residence portion where they were living in, belonging to appellants, together with the entire stock of goods, merchandise, and fixtures both of

---

⇐⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the grocery store and meat market, were sold to R. S. Coleman for a consideration valued for the purposes of the trade at $8,000; $6,-409.43 being paid by Coleman executing to G. W. Sanderfur his note for that amount payable on the installment plan, and for the remainder of the consideration Coleman conveyed to appellants an equity in property, its value not shown, situated in Los Angeles Heights, Bexar county.

It was admitted the sale to Coleman carried fixtures and groceries, which were inventoried, amounting to $2,082.97 and about $700 due the business on open account, a Ford truck, and the sum of $1,030 cash in the bank. Neither the accounts, Ford truck, nor money passed to Coleman by the sale. Appellee claims that the good will of the business was an asset of the firm that passed by the sale and was worth $1,000.

The case was tried before the court with a jury on special issues. They found: First, that appellees were entitled to a one-half interest in the business; second, that it was not contingent upon appellees selling their Leaky property and paying appellants one-third of the money advanced by appellants to establish a business; third, and the reasonable value of the good will was $1,000— and judgment was entered by the court in favor of appellees as follows:

"It is therefore considered, ordered, adjudged, and decreed that plaintiffs, Sam Beard and Carrie Beard, do have and recover of and from the defendants, George W. Sanderfur and Anna L. Sanderfur, the sum of $1,149.38; that plaintiffs and defendants be and they are hereby decreed to be the equal and joint owners of the outstanding accounts due by customers to said former copartnership; that the clerk of this court be and he is hereby ordered and directed to pay over to plaintiffs, Sam Beard and Carrie Beard, the aforesaid sum of $1,037.72 now in the registry of the court, the same to be applied as a credit upon the aforesaid amount of $1,149.38 due by defendants to plaintiffs; that plaintiffs further recover of defendants the sum of 6 per cent. interest upon the sum of $111.66 from this date until paid, and that plaintiffs have and recover of and from defendants the title and possession of said automobile truck; that plaintiffs recover of defendants all costs in this behalf incurred; and that plaintiffs have their execution."

[1, 2] The first question presented for our consideration is as to whether the facts show that there was any good will that passed by the sale to Coleman or that in fact any such existed as an intangible asset.

There is such a thing as good will that arises and grows out of a mercantile business, but none existed here, nor did any pass by the sale. All the business was conducted largely by appellees, receiving some assistance from appellants, and both appellees and appellants occupied jointly portions of the building as their home and residence.

The title to the real property was in appellants, who improved it and made it good enough for the small business and a comfortable home for all the parties by the expending of large sums of money. It was used as the place of business and the home free of rent to appellees. Appellants gave part of their time, when possible, to the business, and for services to this business for six months neither party drew out one cent for their personal account nor for salary or any other purpose, and at the end of a period of six months the entire profits were $1,030 and about $750 in open accounts.

It will be remembered that appellees never paid in their portion of the capital stock or any interest on the only money that was used in the business advanced by appellant. There was not a dollar paid for overhead charges; this was advanced or allowed by appellant. The store belonged to appellant, and, if there was any good will in the situation of the store, appellee could claim no interest in its sale.

If the business had had to pay for rents, salaries, etc., and bear the living expenses and charges for residence of each furnished by appellant there might not have been any profits.

Good will is an intangible asset, and may be taxed like any other like property, if its value can be ascertained.

"The term 'good will' has been defined by statute as 'the expectation of continued public patronage.' Judges have found no little difficulty in framing a definition but their tendency is to expand rather than to narrow its scope. Lord Eldon's statement that the good will of a business 'is nothing more than the probability that the old customers will resort to the old place' has been criticized repeatedly as too limited for modern kinds and methods of business. It has been well said that 'the habit of people to purchase from a certain dealer or manufacturer, which is the foundation for any expectation that purchases will continue, may depend on many things beside place. Confidence in the quality of the goods, in the facilities of the establishment to fill orders promptly, or in the personal integrity or skill of a dealer or manufacturer, familiarity of the public with a designating name for the product, and probably many other circumstances, might be mentioned as illustrative.' The good will of a business is property, taxable and salable as such. It passes to the purchasing partner or partners, upon the retirement of a member, when the contract expressly includes it; and, even though not mentioned in terms, it passes upon a sale of the retiring partner's interest in the entire property and business of the firm, unless there is a statute to the contrary, or unless there is something in the circumstances which shows that it was not intended so to pass." 30 Cyc. p. 606; 30 Cyc. pp. 1275, 1276; Smith's Mercantile Law, 252; Rice v. Angell, 73 Tex. 350, 11 S. W. 338, 3 L. R. A. 769; Sheehan v. Sheehan (Tex. Civ. App.) 196 S. W. 665; 28 C. J. 730, 732, 734.

It was contemplated from the very beginning of the partnership that it was appellants' purpose to start this business to enable him to sell his real estate for a reasonably fair value. In the sale to Coleman the sale of the good will was not mentioned or considered at all and did not pass by any direct or expressed sale. It was not shown that it was in the minds of either that there was contemplated any sale of the good will of this little business, or that the purchaser desired the so-called good will, or would use their partnership name, or would continue in that location, for he did not.

For this little business, and without the expenditure of one dollar in money towards the capital stock by appellee, the free use of appellants' property, no rents or overcharges, it is quite difficult to measure to appellee any interest in any good will, for, but for the use of appellant's property free and his money too, there perhaps could hardly have been a profit arising in the business. The reasonable rents on his property and interest on his money advanced would no doubt have nearly equaled the alleged profits, and especially so if any of the parties had charged reasonable wages for their work.

We cannot see here what rule was used to establish or measure the value of the good will, if any, in this case. Every successful going business concern of course, must have customers, but that does not prove that it has a good will of any especial value.

Good will is an intangible thing apart from the business itself and recognized in law, as a real asset of value in the trade, and such as a purchaser may acquire in a sale to him of peculiar value, one of the considerations inducing the purchase.

The good will of a business is like the good name of the man. It is a part of him. It is what he builds up by probity of character and a lifetime of good works and good deeds. It does not spring up like "Jonah's gourd" in a night, nor does good will spring up on the opening of a business, the result of a few months' work; it is necessarily of very gradual growth, a business firmly and notoriously established.

Appellant gives a very good illustration, saying:

"It is not a fungus attaining its development in a night, nor an annual passing from seedling to full fruitage in a short season; neither is it, like faith, the evidence of things not seen nor the substance of things hoped for. It is more like character, or more accurately, reputation. It involves the idea of maturity and solidarity. It is known by its works long continued, and is valuable only as it obtains material results.

"A profitable business may exist unsupported by good will, but good will cannot exist 'as far as value is concerned' unconnected with a reasonably profitable business.

"If any good will existed in connection with the business of G. W. Sandefur & Co., the result obtained would indicate that it was a liability instead of an asset. Three able-bodied adults, with free use of valuable property, and no rents or overhead expense to hamper their efforts, worked day and night seven days in the week and failed to make reasonable wages. Apparently there was some handicap; perhaps it was this good will that sapped its life. According to the appellees, it developed far more rapidly than did the business which is supposed to have created and supported it. Assuming that it came into life at the same hour with the business, its value increased at the rate of $200 per month, if it was worth $1,000 when the business was sold, as found by the jury. At the end of that period it equaled all their cash profits as shown by their bank deposits. "Had the business and the good will increased in the same ratio for a period of three more years, at the end of that time the value of the business transacted would have been the same, but the good will would have increased until its value exceeded that of the real estate and all the assets and other profits of the business combined.

"The amount received by appellant in the sale to Coleman was also indefinite. Appellant received no money, but increased his indebtedness $1,700; acquired an equity in real estate in Los Angeles Heights and received a note for about $6,000, the principal payable at 1 per cent. per month plus $5. The contract of sale between appellant and Coleman showing the consideration received, consisting of both real estate and personal property, such as a cow, armchair, chickens, oil can, swing, and chicken coop, was excluded from the evidence when offered by appellant. There was no evidence to show the value of the installment note or the value of the real estate and varied items of personal property received in payment. From the testimony no accurate opinion could be formed as to whether or not appellant received in this sale as much as the value of his real estate nor what the cash value of the property he received was. Appellant may have thought that the total value of the equity in the Los Angeles Heights property, the installment note, the cow, swing, chickens, and oil can, was $8,009.43, but he is not shown to know anything of their value, and none of the witnesses attempted to testify as to the value of anything except of the real estate at South San Antonio, and only indefinitely as to that."

[3] The price at which the real estate was sold can cut no figure in measuring the good will of the business, for appellees had no interest in that property. The goods, wares, and fixtures were definitely ascertained, fixed, and established by the inventory by which the sale was made of the personal property.

If the value of the land was an issue at all, it would be its reasonable market value at the time of the sale to Coleman. McLane v. Paschal, 74 Tex. 23, 11 S. W. 837.

There is nothing so difficult to prove; in a sale and purchase so many elements enter, making value.

[4] But the price paid by appellants for the property in 1919 was not material. The

deed, which contained this recitation, "In consideration of the sum of $100.00 cash, and other good and valuable consideration paid and secured by G. W. Sanderfur and the assumption of a note originally in the sum of one thousand four hundred ($1,400) dollars, dated August 2, 1917, payable to the West End Lumber Company in monthly installments of twenty-five ($25.00) dollars each and interest, the first installment payable September 2, 1917, * * * grant, sell, and convey unto G. W. Sanderfur lot 17, block 15 and an undivided one-half interest in lot 8, block 7, South San Antonio, Bexar county, Texas," was clearly inadmissible. The court overruled the objection, then permitted the appellee to interrogate appellant in respect to the consideration paid, and as authority therefor declared, as shown by the indorsement on the bill of exception," that the deed was admissible for two purposes: First, on the issue of the value of the property; and, second, as testing the credibility, memory and recollection of the witness." The consideration mentioned did not state all the consideration.

We cannot say how far the jury were influenced by the introduction of the deed for one of the purposes alleged of "testing the credibility" of the witness, which, of course, means impeaching the witness. That it may have had that effect, here is made apparent by the fact that the jury found every issue against appellant, and found a verdict that gives the limit of appellees' demands.

[5] We think appellants' assignment No. 4 is well taken. The charge of the court did not submit to the jury any issue to find as to whether there existed any good will that passed by the sale, whereas the court assumed on this issuable fact, strenuously contested, as to whether there was any, to hold there was, and thereby instructed the jury to determine its value. Appellants had a right to have the jury pass on that issue. The law does not assume that in the sale of any partnership stock of goods, wares, and merchandise a good will always passes. It takes more elements than a mere sale of a small business operated only about six months to create a valuable good will.

[6] We think appellants' eighth assignment was good. It was an issue sharply disputed as to whether appellee was to secure money only from the sale of the Leaky property to reimburse appellant for the money advanced to carry on the partnership business, because the charge confines the contingency to the sale of the Leaky property, thereby assuming they were under no obligations to repay appellants from any other source.

[7] The charges requested by appellant in the ninth, tenth, and eleventh assignments, considered together, was a request that the issues as to whether appellees failed to comply with their obligations in their original agreement informing the partnership and as to what, if any, obligation they failed to comply with, and as to whether appellants ever waived any of them, are very inartistically drawn and very general; yet it called the court's attention to the issues in respect to the alleged and claimed breaches of appellees to pay or reimburse appellants in any moneys, and those issues in some form should have been submitted.

[8] We think the sixteenth assignment is well taken. The contract of sale entered into by and between R. S. Coleman and appellants when said property was sold and disposed of was material on the question as to whether the sale involved any alleged good will figuring in the purchase.

For the reasons given and other reasons apparent on the record not necessary to discuss, but assigned, we believe the trial court erred in its ruling and in refusing to give appellants a new trial.

The judgment of the trial court is reversed, and cause remanded for another trial.

Reversed and remanded.