**Joe HOWELL, Appellant,**

v.

**A. F. BOWDEN, Appellee.**

No. 16149.

Court of Civil Appeals of Texas.

Dallas.

March 29, 1963.

Rehearing Denied June 14, 1963.

Chester A. Oehler, Dallas, for appellant.

Leake, Henry, Golden, Burrow & Potts, Dallas, for appellee.

DIXON, Chief Justice.

A. F. Bowden, plaintiff in the trial court sued appellant Joe Howell for accounting and settlement of a partnership; and for damages alleged to have resulted from appellant's breach of his fiduciary duties as a partner and trustee both before dissolution and thereafter during the winding up period.

A duly appointed receiver has paid the sum of $58,675.68 into the registry of the court, which sum represents the net proceeds of the sale of the tangible and physical assets of the partnership. The money awaits distribution following final judgment.

After a jury verdict judgment was entered in favor of appellee for the sum of $29,337.84, being one-half the amount paid into the court by the receiver; and for the further sum of $54,491.88, being an award as damages for wrongful termination of the partnership. The judgment provides that appellant's one-half of the money in the registry of the court shall be applied on the $54,491.88 leaving a balance of $25,154.04 principal on the judgment in favor of appellee.

## FACTS

Appellant and appellee, formerly close friends, agreed in 1956 to form, and they did form, a partnership under the name Tex-O-Koma Sales Company to act as manufacturers' agents in selling electronics equipment. Each paid in $2,000.00 as his initial capital investment. Appellant devoted his full time to the business. Appellee was a jet pilot in the Air Force, so he devoted only part of his time to the business— during his leave time, after duty hours, etc. He was to share losses, but until he retired from the Air Force he was to receive only such part of the profits as appellant should allocate to him. After his retirement from the Air Force appellee was to devote his full time to the business and share equally in the profits.

In 1956 the business lost $795.11, which loss was shared equally by the partners.

In 1957 the business made a profit of $17,801.50, of which $16,199.06 was allocated to appellant and $1,602.44 to appellee. In 1958 the profits were $31,349.09, of which $27,849.09 was allocated to appellant and $3500.00 to appellee.

Appellee resigned from the Air Force and on January 1, 1959 began to devote his full time to the partnership business. The capital accounts were balanced as of the above date. In 1959 the profits were $49,-879.44, which amount was divided equally by the partners.

The company bank account was in the name of both partners and their wives. Any one of the four had authority to write checks. A certificate was filed in the Assumed Name Records of Dallas County,

Texas showing that Tex-O-Koma was a partnership composed of appellant and appellee. Income tax returns for the company were filed in 1956, 1957, 1958 and 1959 showing the company to be a partnership.

In November or December 1959 dissension arose between the partners. On March 5, 1960 appellant withdrew $5,000.00. At the same time he caused a second set of books to be prepared. On March 15, 1960 appellee, who had been in Albuquerque, New Mexico on business, came to the home office in Grand Prairie, Texas, to find the books and records gone, no monthly statement available for February and the bank account exhausted. Upon inquiry appellee was informed by appellant that the books were at the Internal Revenue Office. This was not true. A quarrel took place. Appellee made a buy or sell offer. Appellant made a counteroffer.

Appellant then changed the locks on the office, took sole control of the office, the telephone numbers, the address of the business and made representations that thenceforward Tex-O-Koma would be carried on by him as a sole ownership. He also negotiated new agreements from manufacturers in which he was to act as agent instead of the partnership. He organized a corporation known as Howell Sales Company which took over most of the assets of the partnership, including the telephone, office address, etc.

This suit was filed April 11, 1960. On May 11, 1960 a receiver was appointed by agreement of the parties. The receiver collected the assets, except a few accounts, paid the money into the registry of the court, and was discharged.

Among the fifteen numbered findings of the jury were these: (1) On or before January 1, 1959 the parties agreed that all net profits resulting from monies collected after January 1, 1959 should be divided equally; (2) appellant wrongfully terminated the business relationship between the parties; (3) appellee suffered damage as a direct and proximate result of such wrongful termination; (4) the damage was in the amount of $57,500.00; (9) appellant was not justified in changing the locks on the office of Tex-O-Koma Sales Company; and (10) appellee did not terminate the partnership on March 15, 1960.

Appellee filed a remittitur of $3,008.82, thereby reducing the judgment for damages to $54,491.88.

## OPINION

We shall first consider appellant's tenth point on appeal in which he complains that (1) there is no jury finding that a partnership existed; (2) there is no jury finding of the profits; and (3) no finding as to how much appellant was to receive.

We see no merit in this point. Appellee pled an equal partnership. Appellant did not plead a sworn denial of the partnership as required by Rule 93(f), Texas Rules of Civil Procedure. Therefore the partnership stands as admitted. Coulson v. Alvis Auto Rentals, Tex.Civ.App., 352 S.W.2d 849; Foster v. Pace Packing Co., Tex.Civ.App., 269 S.W.2d 929.

Further, the undisputed facts as hereinbefore set out, most of them admitted by appellant or disclosed by exhibits prepared and signed by appellant, show conclusively that the business was a partnership.

The evidence does not raise issues requiring jury findings as to profits or as to how much appellant was to receive. The company records, kept by appellant or under his supervision, show the material facts beyond dispute. The judgment provides that the partners are to share tangible or physical assets equally. Appellant's share is merely a matter of computation based on the records. Anyway appellant did not request submission of an issue inquiring how much he was to receive, so he cannot complain now that no finding was made. Appellant's tenth point is overruled.

In his first point appellant asserts that the trial court erred in that the judgment seeks to enforce an oral agreement not to be performed within a year, therefore is violative of Art. 3995(5), Vernon's Ann.Civ.St. We do not agree for these reasons:

(1) Appellant and appellee entered into a verbal contract to form a partnership. They did form a partnership—a status created by their performing their agreement. Glasscock v. Price, 92 Tex. 271, 47 S.W. 965, 966. Martin v. Hemphill, Tex. Com.App., 237 S.W. 550; 32 Tex.Jur. 221; 40 Am.Jur. 126–127. Their agreement being thus fully performed, does not come within prohibition of the Statute of Frauds. Palmetto Lumber Co. v. Gibbs, Tex.Civ. App., 52 S.W.2d 120, 128 (Aff. 124 Tex. 615, 80 S.W.2d 742, 102 A.L.R. 474); Shropshire v. Adams, 40 Tex.Civ.App. 339, 89 S.W. 448; Price v. Felumlee, 60 Ohio App. 34, 19 N.E.2d 290; 26 Tex.Jur.2d 264–265; 37 C.J.S. Frauds, Statute of § 238, p. 740.

(2) No time limit was set for the duration of the relationship. Therefore it was terminable at will. That being so it was susceptible of being performed within a year, hence does not come within the Statute of Frauds. Ware v. Chatham, Tex.Civ.App., 56 S.W.2d 229; Hatzfeld v. Walsh, 55 Tex. Civ.App. 573, 120 S.W. 525; Shropshire v. Adams, 40 Tex.Civ.App. 339, 89 S.W. 448; Weatherford, M. W. & N. W. R. Co. v. Wood, 88 Tex. 191, 30 S.W. 859, 28 L.R.A. 526; 26 Tex.Jur.2d 192–195; 49 Am.Jur. 404, 68 C.J.S. Partnership § 61, p. 486.

(3) We think there was sufficient memoranda signed by appellant, the party to be charged, to comply with the Statute of Frauds, Art. 3995(5), V.A.C.S. Among these memoranda are the certificate filed in the Assumed Name Records and the income tax returns for the years 1956, 1957, 1958 and 1959. These documents, signed by appellant, show that the business arrangement was a partnership. The date of organization, the character of the business, the division of losses and profits (including the change to equal division of profits in 1959) and the ownership of the capital accounts are shown.

In support of the foregoing conclusion we quote from the holding of our Supreme Court in Adams v. Abbott et al., 151 Tex. 601, 254 S.W.2d 78, 80: "* * * A memorandum is required by the statute of frauds, not for the purpose of obtaining a contract in writing, but merely to furnish written evidence, signed by the party to be charged, of the obligation to be enforced against him. Therefore, a valid memorandum of the contract may consist of letters and telegrams signed by the party to be charged and addressed to his agent or the other party to the contract, *or even to a third person not connected with the transaction.* 49 Am.Jur., Statute of Frauds, § 334; 37 C.J.S., Frauds, Statute of, § 173; Street v. Johnson, Tex. Civ.App., 96 S.W.2d 427." (Emphasis ours.) See also Rochelle v. Gibler, Tex. Civ.App., 269 S.W.2d 515, and 26 Tex.Jur. 2d, 247. Appellant's first point is overruled.

In his second, third, fourth, sixth, eighth and fourteenth points appellant asserts that (2) the judgment is at variance with and (3) does not have support in the pleadings; (4) there is no evidence to support the recovery; (6) the court should not have overruled appellant's motion to disregard the jury's findings; (8) appellant was entitled as a matter of law to at least $63,926.35 before dividing any profits; and (14) the court erred in not permitting appellant to put in evidence his exhibits 74, 74(a) and 74(b), a schedule showing monies amounting to $33,501.18 (part of the $63,926.35) collected subsequent to January 1, 1959, but earned prior to January 1, 1959.

The jury found in answer to special issue No. 1 that the parties agreed that all net profits of the partnership resulting from monies collected after January 1, 1959 should be divided equally between the partners.

The issue has support in appellee's pleading and the court properly refused to disregard the jury's finding. Appellee pled the agreement as heretofore set out in this opinion. He further pled that "during 1959 said partnership made a net profit of $49,-879.44 which was apportioned equally to plaintiff and defendant *in accordance with said partnership agreement.*" (Emphasis ours.)

The above pleading is supported by evidence. We quote from appellee's testimony:

"Q. * * * I want to know if at that time you had any agreement concerning the division of profits after you were to become a full time participant in the business

"A. Yes sir.

"Q. What kind of an agreement did you have at that time concerning the profits after you became fully participating?

"A. We had an agreement where we would equally participate in the profits on my reporting for active duty in the business.

"Q. Did you agree to report at all events—

"A. Yes sir.

"Q. —at some time?

"A. Yes sir, the earliest possible moment I would enter into the business."

The remainder of the $63,926,35 claimed by appellant is made up of the sum of $16,-025.17 which appellant says he earned after dissolution of the partnership; and the sum of $14,600.00 which appellant says is back compensation due him and his wife.[1]

Appellant claims the partnership was dissolved March 15, 1960. But he overlooks the winding up period, which certainly lasted at least until May 11, 1960 when the receiver was appointed. Dissolution does not terminate a partnership.[2] The relationship continues during the winding up period. This is especially true when one of the parties is still in charge of the business. He occupies a fiduciary relationship to the other partner until the winding up of the partnership affairs is complete.

Rowley on Partnership, § 582 (1960 Ed.) says there are three steps in the termination of a partnership: (1) dissolution, (2) winding up and (3) termination and accounting. See also Jones v. Mitchell, Tex. Civ.App., 47 S.W.2d 371; 40 Am.Jur. 388, 393; 80 A.L.R. 15; 55 A.L.R.2d 1424.

The $14,600.00 claim was once pled by appellant but was later abandoned and not repled. There is no current pleading to support the claim. See Fithel v. Saltes, Tex.Civ.App., 11 S.W.2d 815, 819.

Appellant's contention is that the items constituting his claim of $63,926.35 should properly be credited to his capital account and paid to him before profits are divided between the partners. We cannot agree. The books and records of the partnership were kept by appellant or under his supervision. They refute appellant's contention.

The capital accounts on December 31, 1958 showed capital credits to appellant of $14,322, and to appellee of $12,262.44. Through March 31, 1959 the capital accounts were exactly balanced at $11,702.42 for each partner. Appellant's capital account was $500.00 less than appellee's at the end of December 1959 and $1500.00 less at the end of February 1960. The receiver's motion to sell the assets and the court's or-

---

1. The total of the items claimed by appellant amounts to $64,126.35—$200.00 more than the amount stated in appellant's brief.

2. It is interesting to note that the Texas Uniform Partnership Act which went into effect in 1962, too late to control this case, so provides. See Art. 6132b, § 30, V.A.C.S.

der show the capital accounts balanced as of May 11, 1960. The court order properly found and concluded that the monies in the registry of the court belonged equally to appellant and appellee. Appellant's second, third, fourth, sixth, eighth and fourteenth points are overruled.

■ In his fifth, seventh and ninth points appellant says that the court erred in overruling his exception as to damages, in rendering judgment on an erroneous measure of damages, and in rendering judgment for damages and for one-half the money paid into court by the receiver.

As to the amount of damages appellee relied on the testimony of two expert witnesses, Oscar K. Thornton and Wm. J. Murrell. They testified that the business, other than physical assets and accounts receivable, had no cash market value. Each of them testified as to his training and experience in appraising the intrinsic value of partnerships. Murrell testified especially with regard to his experience with reference to valuations in the field of manufacturers' representatives in electronics partnerships. Thornton had made an accountant's report on the books of the partnership. In response to hypothetical questions Murrell fixed the intrinsic value of the partnership business, including good will, at $197,-126.84—Thornton fixed the intrinsic value at $101,250.00.

In our opinion it was not reversible error for the court to render judgment for damages based on the evidence and the jury verdict in this case. We have found no case exactly in point. But there are several which hold that in a suit involving dissolution and wrongful termination of a partnership damages are recoverable when the assets or part thereof are destroyed by the tortious conduct of one of the partners. As was said in Ball v. Britton, 58 Tex. 57:

"* * * The defendant did not withdraw from the firm. He expelled the plaintiff out of it; and he not only re-

tained all that he had put into it, but he kept all that had been contributed by the plaintiff, except a certain portion of the profits. * * * We think, therefore, that the petition set forth a good cause of action. * * * In the case before us, there was a breach of contract, certainly; but there was much more. The plaintiff was, with every circumstance of contumely, excluded from a business in which he had an interest, and from premises in which he had a right to work, at least for the time being. The defendant appears to have taken the law into his own hands, and to have closed the partnership in a manner entirely too summary to be sanctioned by a court of justice. * * *"

See also Inman v. Parr, Tex.Civ.App., 311 S.W.2d 658; Taormina v. Culicchia, Tex. Civ.App., 355 S.W.2d 569. Warner v. Winn, Tex.Civ.App., 191 S.W.2d 747, 749; 40 Am.Jur. 468; 68 C.J.S. Partnership § 117, p. 558.

■ Intrinsic value is the proper measure of damages in the absence of market value. Heiligmann v. Rose, 81 Tex. 222, 16 S.W. 931, 13 L.R.A. 272; International-Great Northern R. Co. v. Casey, Tex. Com.App., 46 S.W.2d 669; Tabb v. City of Mount Pleasant, Tex.Civ.App., 12 S.W.2d 831; Texas & Pacific R. Co. v. Wilson Hack Line, 46 Tex.Civ.App. 38, 101 S.W. 1042. Good will is property and damages are recoverable for injury to it. Texas & P. R. Co. v. Mercer, 127 Tex. 220, 90 S.W. 2d 557, 106 A.L.R. 1299.

In Ball v. Britton, supra, the court in allowing ordinary damages used the value of plaintiff's services as the proper measure. But there the plaintiff had contributed no capital to the business. On dissolution there was a question whether he had ever contributed any capital ownership to the business. Here there is no question but that the partners contributed equally to the capital fund of the business.

For another reason we are of the opinion that the judgment for damages should not be reversed on the ground that the judgment is based on the wrong measure of damages. Appellant made no objection to the court's charge to the jury on the ground he here urges, or to the court's failure to submit any issues, or to the court's definition of intrinsic value. Under Rules 274 and 372(d) appellant waived any objections to the court's charge on the ground that it submitted the wrong measure of damages and will not now be heard to complain that the court's charge permitted the jury to find damages based on a wrong measure. Lloyds America v. Payne et al., Tex.Civ.App., 85 S.W.2d 794; Iowa Mfg. Co. v. Baldwin et al., Tex.Civ.App., 82 S.W. 2d 994, 999; Parks v. Hines, Tex.Civ.App., 68 S.W.2d 364, 368.

Appellant's fifth, seventh and ninth points are overruled.

Appellant's eleventh, twelfth and thirteenth points involve the admissibility of evidence. He says it was error for the court to overrule (11) his objections to appellee's offers of compromise to give or take $100,000.00 for the business; (12) his objections to the testimony of appellee's expert witnesses Murrell and Thornton; and (13) his objections to appellee's Exhibit No. 68, Thornton's analysis, because the analysis contained hearsay entries.

The record discloses that on or about March 25, 1960, after the partners had come to the parting of their ways, appellee made an offer to appellant to give or take the company's airplane, automobile, territory rights in New Mexico, Kansas and Saint Louis and $60,000. cash in settlement. Appellant objected that such testimony was an offer of compromise, therefore not admissible. In support of his position he cites Howard v. O'Neal, Tex.Civ.App., 246 S.W. 2d 907 and Whitsett v. Whitsett, Tex.Civ. App., 201 S.W.2d 114.

In reply appellee says it was not an offer of compromise because at the time there was no dispute between the parties as to the value of their interests in the business and appellee was not making any concession. He cites Sawyer v. Willis, Tex.Civ. App., 310 S.W.2d 398; Ginsberg v. Selbest Dress, Tex.Civ.App., 238 S.W.2d 621; Missouri, K. & T. R. Co. of Texas v. Sullivan, Tex.Civ.App., 157 S.W 193; and 2 McCormick & Ray, Texas Law of Evidence, page 31.

We believe the statement of appellee was an offer of compromise, therefore not admissible in evidence. But under the circumstances its admission does not constitute reversible error for these reasons:

(1) When appellant made his objection, he stated he would object again if the testimony were again offered and would move to strike. The testimony was again offered and appellant made no objection.

(2) In fact appellant later, more than once, cross-examined appellee about the offer and himself testified both on direct and cross-examination about appellee's offer and a counteroffer he made to appellee.

We quote from one of appellant's cross-examinations of appellee:

"Q  What was said, * * *

"A  I said, 'I believe it is time for one of us to withdraw from the business, and I think the business is too small for both of us, or both of us are too large for this business, and I think it is time one of us should withdraw, and I now give you the first opportunity to make a buy or sell offer.' * * *

"Q  All right go ahead with what you said is the only thing that happened.

"A  He declined to make an offer. * * *

"Q  Your Honor, I asked him what he said

"THE COURT: Yes, just answer the question.

"A  He said * * *

"THE COURT. Just a minute, on this business of this matter of an offer being made and discussed, there has been testimony by this witness on that point.

"MR. OEHLER: Yes.

"THE COURT: Try not to repeat, Counsel.

"MR. OEHLER: I was just giving him a chance to say everything that happened. They only asked him as to some things that happened there.

"THE COURT: Proceed."

We quote from the appellant's own testimony on direct examination:

"Q (By Mr. Oehler) All right, Mr. Howell, with reference to what took place out there in the Tex-O-Koma Sales Company office * * * on March 15, 1960, will you tell the jury as best you can recall as to what you say took place there, * * *

"A He said, 'Okay, I will make you an offer. I figure this business is worth $200,000.'. That is when he reached over and got a card on the desk and wrote on this card and dictated to me at the same time, 'I will withdraw and become inactive and I will take the airplane, which represents $30,000, and I will take the New Mexico, Kansas, Missouri territory. I will take $10,000 in cash and $60,000 payable over five years, $1,000 a month, and at the completion of this payment I will give you full control of Tex-O-Koma Sales Company'.

"Q What did you do?

"A When I recovered from the shock of hearing this from my friend I said, 'Well, partner, being as you made me that offer, I will take the same thing with the exception that the $60,000 will also be paid in cash, because you won't last five months'. He said, 'Ha ha. You are not making me the same offer I am making you, and here is my at-torney, you will be hearing from him'., and he wrote Mr. George Potts' name on another card and handed it to me. * * *

"My patience was exhausted. I walked to the side of the desk and I said, 'Frank, get out of my office.' * * *"

■ In the light of the above circumstances we hold that appellant waived his initial objection to appellee's offer of compromise. American Gen. Ins. Co. v. Sims, Tex.Civ.App., 278 S.W.2d 586, Chesshir v. Nall, et al., Tex.Civ.App., 218 S.W.2d 248, 253; Dohoney v. Womack, 1 Tex.Civ.App. 354, 19 S.W. 883; 1 McCormick & Ray, Tex. Law of Evidence, 26–27.

■ Murrell and Thornton qualified as expert witnesses on value of partnerships of this type. Their testimony was admissible. Accountant Thornton's report contained entries which were identified as having their source in the books of the partnership. Appellant's eleventh, twelfth and thirteenth points are overruled.

We find nothing in the record to show that excluded exhibits Nos. 18 and 18A were sent to the jury room. As to exhibits Nos. 1 to 6, appellant himself introduced them into evidence. We find no record that he made any objection, or that they were sent to the jury room. Appellant's fifteenth and twenty-first points are overruled.

In his sixteenth point appellant complains of the court's failure to quash a subpoena duces tecum to bring in the record of appellant's new corporation Howell Sales. In his eighteenth point he complains of appellee's jury argument. In his twentieth point he contends that the receiver should not have been discharged. Appellant lists and restates the above points, but submits no argument in support of them. Nevertheless we have considered them and in our opinion they do not present reversible error. They are overruled.

Appellant, in his seventeenth point, says that the amount of damages found by the jury, $57,500.00, is grossly excessive, unfair, and actuated by prejudice and passion. As already stated appellee filed a remittitur of $3,008.12 thus reducing the judgment for damages to $54,491.88. There was ample evidence to support a judgment for the last named figure. Appellant's seventeenth point is overruled.

Appellant says in his nineteenth point that the evidence is insufficient to support the jury verdict. The statement of facts consists of more than 1,000 pages. We have reviewed the entire record. The evidence is sufficient to support the jury verdict. Appellant's nineteenth point is overruled.

The judgment of the trial court is affirmed.