James B. NAIL, Jr., Appellant,

v.

Alice J. NAIL, Appellee.

No. 17291.

Court of Civil Appeals of Texas, Fort Worth.

Feb. 11, 1972.

Rehearing Denied March 10, 1972.

Fillmore, Parish, Martin, Kramer & Fillmore, and Howard L. Martin, Wichita Falls, for appellant.

Friberg, Martin & Richie, and Gene Richie, Wichita Falls, for appellee.

## OPINION

BREWSTER, Justice.

In this non-jury divorce case the trial court's judgment, dated August 12, 1971, granted the plaintiff, Mrs. Nail, a divorce and divided the property of the parties.

The defendant, Dr. James B. Nail, Jr., is an M.D., who specializes in opthalmology. He and Mrs. Nail married in 1945 which was several years before he was licensed to practice medicine. He has practiced his profession in Wichita Falls, Texas, since 1956.

The evidence showed and the trial court found that from his medical practice Dr. Nail grossed $82,859.60 in 1970; in 1969 he grossed $83,446.60; in 1968 he grossed $87,350.25; and in 1967 he grossed $69,072.13.

In his findings of fact the court found that the value of the assets of Dr. Nail's medical practice, including all fixtures, furniture, and equipment and the value of the good will that has accrued to the medical practice during the existence of the marriage of the parties was $131,759.64. The court further found that Dr. Nail's earning capacity was $52,000.00 a year and that Mrs. Nail is not trained for employment. The parties have two grown children. The court also found that the total value of the office furniture and equipment the parties accumulated in connection with the medical practice was $735.47 and that there were no accounts receiveable accumulated by the business because the medical practice was operated on a cash basis.

The trial court's conclusion of law No. 3 read in part as follows: ". . . that it is fair and equitable to grant to the Petitioner Alice Jane Nail, the following property: . . . (d) A community interest in the medical practice of James Barry Nail, Jr., in the sum of $40,000.00, which said sum shall be payable at the rate of $400.00 per month for a period of 24 months beginning August 1, 1971, and continuing until July 1, 1973. Beginning August 1, 1973, the monthly payments of James Barry Nail, Jr. to Alice Jane Nail should be reduced to $300.00 per month and continue thereafter until the total of $40,000.00 shall have been paid by James Barry Nail, Jr. to Alice Jane Nail, or until the said James Barry Nail, Jr. shall cease to practice medicine; . . . ."

The court's conclusion of law No. 4 provided in part as follows: "I conclude that the Respondent, James Barry Nail, Jr., should be awarded . . . (b) the medical practice that he maintains, including his office furniture, equipment and supplies and all other assets of such medical practice, subject however to the payment to Alice Jane Nail of the sum of $40,000.00 as set out above; . . . ."

In the judgment the court found the value of Mrs. Nail's community interest in the medical practice, "including the good will accrued thereto" to be $40,000.00, and ordered Dr. Nail to pay that amount to Mrs. Nail at the rate of $400.00 per month for the first 24 months after judgment and thereafter at the rate of $300.00 per month, and such payments were to continue until the entire $40,000.00 was paid off or until Dr. Nail ceased to practice medicine.

Dr. Nail has appealed and he makes no complaint about the court's action in granting the divorce and makes no complaint about the way the court divided the property of the parties other than that part of the division relating to the alleged good will of the medical practice as hereinabove set out.

Dr. Nail urges three points of error on the appeal. They are all based on the proposition that the part of the court's decree that awarded Mrs. Nail $40,000.00 and ordered Dr. Nail to pay her that amount in monthly payments until he had paid it all, or until he ceased to practice medicine, was an order requiring him to pay permanent alimony. Dr. Nail contends that since this part of the decree is an award of permanent alimony that it is against the public policy of the State and therefore void and unenforceable and that the trial court therefore erred in making such award.

During the trial evidence was offered on the question as to whether or not Dr. Nail's medical practice had a good will. Evidence was also offered as to the value of such good will. Based on this evidence the trial court found that the value of the

furniture, fixtures and equipment and other assets, including good will, of the medical practice was $131,759.64. Appellant on this appeal does not question the sufficiency of the evidence to support these findings.

The record reflects that the award of the $40,000.00 item was made by the trial court on the basis that Dr. Nail's medical practice had acquired a valuable good will during the long years of the marriage, that this good will was an asset and was community property, and that it should be considered in dividing the property.

We were surprised to find that apparently there has been no divorce case prior to this time appealed in Texas involving the question of whether a professional business that depends on the personal skill, confidence in, and reputation of a particular person can have a good will, and, if so, whether that item should be considered in dividing the property of the parties, and, if so, how a court goes about dividing a good will in such a business.

It has long been established in Texas that an individual's merchandising business can have a good will and that this item of good will is property, even though it is an intangible asset. It can have a value, and is salable. See Gates v. Hooper, 90 Tex. 563, 39 S.W. 1079 (1897); Sanderfur v. Beard, 249 S.W. 274 (San Antonio Tex.Civ.App., 1923, no writ hist.); Howell v. Bowden, 368 S.W.2d 842 (Dallas Tex.Civ.App., 1963, ref., n. r. e.); and Scott v. Doggett, 226 S.W.2d 183 (Amarillo Tex.Civ.App., 1949, ref., n. r. e.).

Judge Hickman said in Texas & P. Ry. Co. v. Mercer, 127 Tex. 220, 90 S.W.2d 557 (Tex.Com.App., 1936) at page 560: "Good will is property. It may be sold and it may also be damaged. There is no principle of law making any distinction between it and other property with respect to the right of the owner thereof to recover damages for its destruction. . . .

". . . Good will, though intangible, is an integral part of the business the same as are the physical assets."

A key determination to be made in deciding this case is whether or not, in Texas, the principles of law above announced relating to the good will of a mercantile business applies also to a business or profession that depends solely on the personal ability, skill, integrity or other personal characteristics of the owner.

Throughout the United States there are presently two lines of decisions on this point. See 38 C.J.S. Good Will § 3, p. 952, and 38 Am.Jur.2d 916, Good Will, Sec. 7. One line of cases hold that good will does not exist in a professional practice or business that depends on the personal skill of and confidence in a particular person, and the other line of cases hold that good will may exist in a professional practice or business founded on personal skill or reputation.

The situation as it now exists throughout the United States on this point is well explained in 24 Am.Jur. 808, Good Will, Sec. 11, wherein the following is said: ". . . it has been held that salable good will can exist only in commercial or trade enterprises and that it cannot arise in a professional business depending upon the personal skill and confidence in a particular person. This view seems traceable to the early and narrow definition given to good will by Lord Eldon. The better doctrine, however, appears to be that good will also exists in a professional practice or in a business which is founded upon personal skill or reputation. Where a person acquires a reputation for skill and learning in a particular profession, as, for instance, in that of a lawyer, a physician, or an editor, he often creates an intangible but valuable property by winning the confidence of his patrons and securing immunity from successful competition for their business, and it would seem to be well settled that this is a species of good will which may be the subject of transfer. The courts have not

infrequently adjudicated rights relating to good will in such cases with seemingly no question as to the reality of the existence of this property right."

We have not been cited to an opinion involving a Texas divorce case wherein this question was before the court, and we have not been able to find such a case.

The only divorce case in any United States Court that we have found dealing with this question is the case of Mueller v. Mueller, 144 Cal.2d 245, 301 P.2d 90 (1956). This case holds that a professional practice may, under certain circumstances, have a transferrable good will attached to it.

On three different occasions Texas courts have had to decide, in cases other than divorce cases, the question of whether or not a professional man can acquire a good will as an asset of his practice or business. Each of those cases involved medical doctors, as does the one here. Each such case held that a professional man, such as a doctor, may acquire good will as an asset of his business. These cases are: Wolff v. Hirschfeld, 23 Tex. Civ.App. 670, 57 S.W. 572 (1900, no writ hist.) ; Yeakley v. Gaston, 50 Tex.Civ.App. 405, 111 S.W. 768 (1908, no writ hist.) ; and Randolph v. Graham, 254 S.W. 402 (San Antonio Tex.Civ.App., 1923, writ ref.).

We hold in line with these three cases that a professional man can acquire a good will in connection with his practice or profession and, if such good will does in fact exist, it is an asset and it is property, even though intangible.

■ The questions of whether or not Dr. Nail had acquired a good will in connection with his medical practice, and whether that good will existed at the time of trial, and, if so, the value thereof, were questions of fact to be determined by the fact finder. See Sanderfur v. Beard, 249 S.W. 274, supra.

The court in this case found that Dr. Nail did own a good will in connection with his medical practice at the time of the trial and the value thereof, and we are convinced and hold that the evidence at the trial was sufficient to support these findings.

■ This item of property (the good will of Dr. Nail's medical practice) is community property, because it was wholly acquired by the Nails during the existence of their marital relationship through means other than by gift, devise or descent.

■ The next question to be determined is whether or not the part of the judgment awarding Mrs. Nail the $40,000.00 and ordering it paid in installments was an award of permanent alimony and void for that reason. We hold that this award was not an award of permanent alimony.

■ The law in Texas is that our courts are not authorized to order the payment of permanent alimony. A court order requiring the payment of alimony after the parties are divorced is invalid, unenforceable and is against the public policy of the State. Francis v. Francis, 412 S.W.2d 29 (Tex.Sup., 1967) and McElreath v. McElreath, 162 Tex. 190, 345 S.W.2d 722 (1961).

In defining "permanent alimony" that is illegal in Texas the Supreme Court in Francis v. Francis, supra, said: ". . . alimony which contravenes the public policy of the State is only those payments imposed by a court order or decree on the husband as a personal obligation for support and sustenance of the wife after a final decree of divorce."

However, the Texas courts have consistently held that if the payments ordered to be made by the divorce decree by one spouse to the other are awarded to such spouse in lieu of his interest in an item of property in which he formerly owned an interest, then such monetary award does not constitute permanent alimony.

This rule is stated in McBean v. McBean, 371 S.W.2d 930 (Waco Tex.Civ. App., 1963, no writ hist.), · as follows: "Such case (referring to McBride v. McBride, 256 S.W.2d 250, Austin Tex.Civ. App., 1953, no writ hist.) recognizes, however, that payments, decreed after divorce, from one party to the other, if, 'referable to any property which either spouse may have owned or claimed', presents a different situation, and is valid and enforceable."

This McBean case applied that rule in holding that the divorce decree ordering the husband to make payments after the divorce of $100.00 a month for life or until she remarried was not an award of permanent alimony, because the decree awarded the husband other property as an offset thereto.

Other cases wherein this same doctrine has been announced and applied in deciding the case are: Miller v. Miller, 463 S. W.2d 477 (Tyler Tex.Civ.App., 1971, ref., n. r. e.); Bunker v. Bunker, 336 S.W.2d 751 (San Antonio Tex.Civ.App., 1960, writ dism.); Brown v. Brown, 442 S.W.2d 461 (Eastland Tex.Civ.App., 1969, writ dism.); and Gent v. Gmenier, 435 S.W.2d 293 (Waco Tex.Civ.App., 1968, no writ hist.).

This rule applies in cases wherein the parties by voluntary agreement have settled their property rights, and it also applies to those cases wherein the trial court has been required to divide the property of the parties in the absence of such an agreement under Art. 4638, Vernon's Ann. Civ.St. as is the case here. See McBean v. McBean, supra, and Gent v. Gmenier, supra.

This $40,000.00 monetary award to Mrs. Nail, payable in installments by Dr. Nail after the divorce, was clearly awarded to Mrs. Nail by the court in lieu of, or as an offset to, her one-half community interest in the assets of their medical practice, including the good will thereof, all of which assets were being awarded to Dr. Nail.

Such award was clearly referable to Mrs. Nail's community interest in an item

of property (the good will in Dr. Nail's medical practice), which property she owned prior to the divorce. This monetary award was not made to Mrs. Nail for her support and sustenance, but was awarded to her in lieu of her interest in other items of property that she owned that were by the divorce decree being taken from her and awarded to Dr. Nail in order to divide their property.

This award was therefore valid and enforceable because, under the holdings of the cases we have cited, it was not an award of permanent alimony.

We have considered this case at length and are unable to see how we could logically arrive at a result different from the one we have reached unless we hold that a professional practice such as the one involved here can not under any circumstances have a good will.

To so hold would require us to hold on this point contra to all of the decided cases in Texas dealing with the question up to this time. We decline to make such a holding.

We overrule all of appellant's points.

The judgment is affirmed.

MASSEY, Chief Justice (dissenting).

Antecedent to the divorce Dr. Nail and his wife were partners, albeit marital and not professional. Despite that fact I would hold that the situation presenting the problem to be resolved would not differ from that which would have obtained had they been professional partners and the decree one dissolving that character of partnership.

Important, I believe, is the *absence of consent* to any disposition of any part of the good will accumulated as personal to Dr. Nail as an individual during the period over which he was the marital partner of his wife. The property apportionment by the divorce decree includes part, if not all, of such good will attached and existent solely because of Dr. Nail's professional skill, experience, and reputation as a physician. It is to be noticed that there was *presence of consent* in the cases cited by the majority upon the matter of acquisition and transfer of good will as an asset of medical doctors, viz: Wolff v. Hirschfeld, Yeakley v. Gaston, and Randolph v. Graham. In these cases it was in actuality something other than the professional skill, experience, and reputation of a doctor which was considered as property, though such had an effect upon the property and had operated to enhance its value.

My quarrel is not with the holding of those cases, nor of the conclusion of the majority that a professional man can acquire a good will in connection with his practice or profession and, if such good will does in fact exist, it is an asset which is property, even though intangible.

The point of my divergence of opinion is the authority of the trial court, *absent the consent of Dr. Nail,* to consider it or its value as part of the property to be divided pursuant to decree of divorce; or, (since Mrs. Nail was not a professional partner and incapable of any personal use of the good will) upon such evaluation to encumber Dr. Nail with an indebtedness to his divorced wife payable out of future income in the event he makes any use thereof by practicing his profession.

The general rule is that in a professional partnership such as of attorneys or physicians, the reputation of which depends upon the individual skill of the members, there is no good will to be distributed as a firm asset upon dissolution as the good will is primarily attached to the persons of the individual partners and necessarily attends each partner's personality upon partnership dissolution. 65 A.L.R.2d 521, Annotation: "Accountability for good will on dissolution of partnership", p. 529, Sec. 5, "Where good will is personal to individual partner or attached to his individual property", and p. 538, Sec. 10, "Good will personal to partners". Of course, there is nothing to

interfere with the transfer of such good will as would be capable thereof by consent, as per contract, etc., a different matter altogether.

Under 38 C.J.S. Good Will § 3, p. 952 "(Nature and Incidents)—Adherence to Place, Name, Property, or Business", and the Subsection, "Business or profession dependent on personal qualities of owner", there is mention of differing lines of cases on the question of the adherence of good will to a business or profession dependent solely on the personal ability, skill, integrity, or other personal characteristics of the owner.

Thereunder is citation to two Tennessee cases by the reasoning of which I am impressed.

Slack v. Suddoth, 102 Tenn. 375, 52 S. W. 180, 45 L.R.A. 589, 73 Am.St.Rep. 881 (Tenn.Sup.Ct., 1899). The parties had been professional partners in the practice of dentistry. Upon dissolution one partner sought and obtained from the chancellor a sum of $500 as his portion of the good will (formerly belonging to both partners) because the other had retained the office location formerly used by both. The court held that the $500 was erroneously awarded, writing, as follows: " . . . no forced sale or transfer can be made of a good will, when it is based upon professional reputation and standing, or upon business connections. Good will implies something gained by consent,—not something realized by force or coercion."

Hunt v. Street, 182 Tenn. 167, 184 S.W. 2d 553 (1945). The parties had been professional partners as architects under the firm name of R. H. Hunt Company. Street, after the dissolution, conducted business under the same company name. Hunt sought and obtained an injunction. Additionally, the chancellor ruled that the firm name was a partnership asset and a receiver was appointed and directed to sell it as such, to the highest bidder at public outcry, with intention to divide the proceeds between the former partners. On appeal the decree authorizing sale of the company name was reversed. The court referred to language in a New Jersey case, viz: " 'Professional skill, experience, and reputation are things which cannot be bought or sold. They constitute part of the individuality of the particular person, and die with him.' " Mandeville v. Harman, 42 N.J.Eq. 185, 193, 7 A. 37, 40 (1886). The court also made reference to 24 Am.Jur., p. 805, "Good Will", Sec. 5, "Elements", and quoted from 40 Am.Jur., p. 316, "Partnership", Sec. 271, "Professional Partnerships", as follows: " 'The general rule is that a professional partnership the reputation of which depends on the individual skill of the members, such as partnerships of attorneys or physicians, has no good will to be distributed as a firm asset on its dissolution. Therefore, no forced sale or transfer can be made of the good will of such a partnership on a termination of the firm by mutual assent.' "

The writer is of the opinion, not only of the soundness of the principles of law declared upon by the two Tennessee cases, but that these same principles would have full application to the divorce of the marital partners in the instant case. If in the one instance a forced sale of the professional good will of either or both parties would be inhibited by law the same would be true in the other.

The proper answer is: the good will of Dr. Nail, attached and existent because of his professional skill, experience, and reputation as a physician, comprises no part of the property to be administered upon dissolution of the marriage, whether by death or divorce.

I recognize and acknowledge that the trial court's attempt at property division was not an award of alimony. I also am aware that the "points of error" presented do not predicate complaint on the ground discussed and which I believe constitutes reversible error. However, I believe that in the light of the statements and arguments made under all points the ground

may be said to be fairly raised and presented. The court is authorized to pass on the sufficiency and merits of a point of error in the light of the statements and arguments thereunder. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478, 482 (1943); Texas Rules of Civil Procedure 418, "Briefs: Contents".

I would remand the cause to the trial court in order that a new property division might be made without the inclusion, as part of such property, a "value" placed upon Dr. Nail's professional skill, experience, and reputation as a physician.