James B. NAIL, Jr., Petitioner,

v.

Alice J. NAIL, Respondent.

No. B–3317.

Supreme Court of Texas.

Nov. 8, 1972.

Fillmore, Parish, Martin, Kramer & Fillmore, Howard L. Martin, Wichita Falls, for petitioner.

Friberg, Martin & Richie, Gene Richie, Wichita Falls, for respondent.

STEAKLEY, Justice.

Section 3.63 of the Texas Family Code [1] requires the Court in a decree of divorce to "order a division of the estate of the parties in a manner that the court deems just and right . . . ." The controlling question here is whether in this divorce proceeding the accrued good will of the medical practice of the husband, a doctor of medicine specializing in ophthalmology, based as it is on his personal skill, experience and reputation, as well as upon his continuing in the practice, constitutes property that is subject to division as part of the estate of the parties. The trial court and a divided court of civil appeals considered that it was. 477 S.W.2d 395. We hold that it was not.

The problem is posed in this manner. Petitioner, Dr. James B. Nail, Jr. and his wife, Alice J. Nail, Respondent, were married in 1945. He was subsequently licensed to practice medicine and has practiced in Wichita Falls, Texas, since 1956. His wife sued him for divorce which was granted by judgment dated August 12, 1971. The court ordered a division of the estate of the parties and that which is questioned here is the following grant to Alice J. Nail in the decree of divorce:

"The Court finds that the value of Alice J. Nail's community interest in said medical practice, including the good will accrued thereto, to be the sum of $40,-000.00. This sum shall be paid to Alice J. Nail by James B. Nail, Jr. at the rate of $400.00 per month for a period of twenty-four (24) months beginning August 1, 1971, and continuing to July 1, 1973. Beginning August 1, 1973, the monthly payments from James B. Nail, Jr. to Alice J. Nail shall be reduced to $300.00 per month and shall continue thereafter until the total sum of $40,000.00 shall have been paid by James B. Nail, Jr. to Alice J. Nail, or until the said James B. Nail, Jr. shall cease to practice medicine."

The supporting findings of fact and conclusions of law of the trial court were these:

"That except for the cruel conduct on the part of the said James Barry Nail, Jr. to Alice Jane Nail, the marriage could have continued.

1. Vernon's Texas Codes Annotated, Family Code.

"That had the marriage continued, Alice Jane Nail would have had the benefit of community income in the approximate sum of $53,000.00 per year.

"That during their marriage, James Barry Nail, Jr., completed his pre-medical education, graduated from medical school, completed his internship and his residency in opthalmology.

"That Alice Jane Nail and James Barry Nail, Jr., accumulated and now own the following community property:

(a) The house and lots located at 4502 Martinique Street, Wichita Falls, Texas;

(b) Valuable household fixtures, furnishings and appliances located in the home at 4502 Martinique Street, Wichita Falls, Texas;

(c) The medical practice of James Barry Nail, Jr.;

(d) Two automobiles; and

(e) One boat and motor.

"There are no liquid assets owned by the community estate of Alice Jane Nail and James Barry Nail, Jr.

"That the value of the assets of the medical practice of James Barry Nail, Jr., is $131,759.64, including all fixtures, furniture, equipment, and the value of the good will that has accrued thereto during the marriage of Alice Jane Nail and James Barry Nail, Jr.

"That the approximate value of Defendant's office equipment and office furniture is $735.47.

'That James Barry Nail, Jr., has an earning capacity of approximately $52,000.00 per year.

"That the earning capacity of James Barry Nail, Jr., will increase in subsequent years.

"That Alice Jane Nail is not trained for any employment.

"I conclude from a consideration of the respective ages of the parties, their earning capacities and abilities, the conduct of the Respondent toward the Petitioner, what the Petitioner could have reasonably expected to receive from a continuation of the marriage, except for the conduct of the Respondent, and from all other factors that it is fair and equitable to grant to the Petitioner Alice Jane Nail, the following property:

(a) . . .

(b) . . .

(c) . . .

(d) A community interest in the medical practice of James Barry Nail, Jr., in the sum of $40,000.00, which said sum shall be payable at the rate of $400.00 per month for a period of 24 months beginning August 1, 1971, and continuing until July 1, 1973. Beginning August 1, 1973, the monthly payments of James Barry Nail, Jr. to Alice Jane Nail should be reduced to $300.00 per month and continue thereafter until the total of $40,000.00 shall have been paid by James Barry Nail, Jr., to Alice Jane Nail, or until the said James Barry Nail, Jr. shall cease to practice medicine; . . . "

It is to be observed that the decree of the court was not based upon a permissible agreement between the parties for support payments to the wife after divorce; nor was it in terms of a court imposed personal obligation of the husband for support of the wife after divorce that would constitute permanent alimony not sanctioned by the statutes and public policy of Texas. See Francis v. Francis, 412 S.W.2d 29 (Tex. 1967); Art. 2328b-4, § 2(f), Art. 4637, Vernon's Ann.Civ.St., and Sec. 3.59 of the Texas Family Code. Rather, the decree in the respects under attack purported to be an exercise of the discretionary powers of the trial court in effecting a just and right division of the estate of the parties.

As noted, the trial court found the value of the husband's medical practice to be $131,759.64, inclusive of fixtures, furniture, equipment and accrued good will; but the court further found the value of the furniture and equipment to be only approximately $735.47, thus leaving a valuation of accrued good will in the sum of $131,024.17. The further finding that the wife's community interest therein was $40,000.00 was derived, at least in part, from the testimony of a witness offered by the wife as an expert that the valuation of the good will of a professional practice would have "a starting point" of "multiplying one full year's billings by one or one and a half". This seems so in light of the trial court finding that the husband had an annual earning capacity of approximately $52,000, one and one-half of which would be $78,000. In any event it is apparent that the award to the wife of $40,000, payable in future monthly installments if, and so long as, the husband practiced his profession, rested upon the conclusion that the accrued good will of the husband's practice constituted property which was subject to division by the court.

Alice J. Nail asserts that the problem is solved by precedents in our State which recognize that a professional man can acquire and voluntarily sell good will. Cited are Randolph v. Graham, 254 S.W. 402 (Tex.Civ.App.1923, writ ref'd) where it was stated that "[t]he good will of a professional man may be as much an asset and a thing to be sold as that of a merchant."; Sanderfur v. Beard, 249 S.W. 274 (Tex.Civ.App.1923, no writ) and Yeakley v. Gaston, 50 Tex.Civ.App. 405, 111 S.W. 768 (Tex.Civ.App.1908, no writ). So it is said, the husband's medical practice with its good will was owned by the marital partners; and as such, it was property in existence at the time of the divorce that was subject to valuation and partition in a manner within the discretion of the trial court.

We have found no case in point and solution of the problem is not easy. The division of authority on the question of whether good will may exist in a profession dependent on personal qualities of the owner has been stated in this manner:

"    .    .    It has frequently been held that good will does not adhere to a business or profession dependent solely on the personal ability, skill, integrity, or other personal characteristics of the owner. According to other decisions, however, good will may exist in a professional as well as a commercial business, and may be sold together with the estate, and, irrespective of whether there is technically a good will adherent to a business or profession dependent on personal qualities of the owner, contracts disposing thereof coupled with an agreement that the seller would not compete, if otherwise valid, are enforced. In any case, an involuntary sale cannot be made of a good will based on professional reputation. 38 C.J.S. Good Will § 3, pp. 952–953

It is generally held that good will has no existence as property in and of itself, as a separate and distinct entity, but only as an incident of a continuing business having locality or name. 38 Am.Jur.2d, Good Will, § 3, p. 914, and cases there cited. The rule has been otherwise stated that as good will must adhere to some principal property or right, the extinction of such right operates to extinguish the good will dependent on it. 38 C.J.S. Good Will § 4, p. 953. It has been held that good will cannot be levied upon in satisfaction of debts. Lilienthal v. Drucklieb, (Cir. 1898) 84 F. 918. It is the rule in Tennessee that there can be no forced sale or transfer of good will based upon professional reputation and standing against one not assenting. Hunt v. Street, 182 Tenn. 167, 184 S.W.2d 553 (Tenn.1945); Slack v. Suddoth, 102 Tenn. 375, 52 S.W. 180, 45 L.R.A. 589. The distinction has been drawn that professional good will is not so much fixed or as localized as the good will of a trade, and attaches to the person of the professional man or woman as a result of confidence in his or her skill and ability. Finch Bros. v. Michael, 167 N.C. 322, 83 S.E. 458 (1914).

In any event, it cannot be said that the accrued good will in the medical practice of Dr. Nail was an earned or vested property right at the time of the divorce or that it qualifies as property subject to division by decree of the court. It did not possess value or constitute an asset separate and apart from his person, or from his individual ability to practice his profession. It would be extinguished in event of his death, or retirement, or disablement, as well as in event of the sale of his practice or the loss of his patients, whatever the cause. Cf. Busby v. Busby, 457 S.W.2d 551 (Tex.1970), and the cases there referred to with approval, where the husband's existing entitlement to future military retirement benefits was held to constitute a vested property right. The crucial consideration was the vesting of a right when the husband reached the requisite qualifications for retirement benefits; the fact that the benefits were subject to divestment under certain conditions did not reduce the right to a mere expectancy. The good will of the husband's medical practice here, on the other hand, may not be characterized as an earned or vested right or one which fixes any benefit in any sum at any future time. That it would have value in the future is no more than an expectancy wholly dependent upon the continuation of existing circumstances. Accordingly, we hold that the good will of petitioner's medical practice that may have accrued at the time of the divorce was not property in the estate of the parties; and that for this reason the award under attack was not within the authority and discretion vested in the trial court by Section 3.63 of the Texas Family Code.

It is to be understood that in resolving the question at hand we are not concerned with good will as an asset incident to the sale of a professional practice, or that may exist in a professional partnership or corporation apart from the person of an individual member, or that may be an element of damage by reason of tortious conduct.

The judgments below are reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.